**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Crim. No. 1:22-CR-426 |
| v. | : | Judge Jennifer P. Wilson |
| SCOTT E. BOONE, DANIEL E. MCGUIRE, THOMAS E. LAUER, and REBECCA J. DAVIS, | : | |
| Defendants. | : | |

# RESPONSE TO GOVERNMENT'S NOTICE OF SUPPLEMENTAL AUTHORITY

Two essential points underlie the dictum the government quotes from *United States v. Mattia*, ___ F.4th ___, 2025 WL 2962563, *3 (3d Cir. Oct. 21, 2025): "[w]e have long recognized that implicit misrepresentations are cognizable in other fraud contexts," citing *United States v. Ferriero*, 866 F.3d 107, 120 (3d Cir. 2017)(wire fraud).

**1.** First, *Ferriero* addresses the category of not-express falsehoods called "half-truths." Applying *Universal Health Services v. United States ex rel. Escobar*, 579 U.S. 176, 188 (2016), it holds that criminal fraud reaches "representations stating the truth so far as it

goes but which … [are] materially misleading because of [the maker's] failure to state additional or qualifying matter." 866 F.3d at 120-21 & n.15. *Ferriero* also reaffirms that though a half-truth may be fraudulent, mere nondisclosure is not[1]—even when accompanied by conduct that creates a false impression. *Id.* (distinguishing *Kehr Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1415-16 (3d Cir. 1991)).

*Universal Health* applied the half-truth rule to false claims for reimbursement, which represented that professionals in specified roles had provided specified mental-health services. 579 U.S. at 189. In that context, omitting that the providers were unlicensed and unsupervised made those representations misleading—and thus actionable. *Id.* 189-90. The Supreme Court defined two requirements for this "implied false certification" theory: (1) the "claim for payment" makes "specific representations about the goods or services provided," and (2) the alleged omission "makes those representations" about the goods or services "misleading half-truths."[2] *Id.* 190.

[1] Absent a fiduciary or similar duty to disclose, that is. *Id.* at 121-22 & n.16.

[2] This analysis connects directly to the heightened materiality standard *Universal Health* adopts and *Kousisis v. United States*, 145 S. Ct. 1382 (2025), discusses with approval in the criminal context, with

This lineage underlies *Mattia* and illuminates its citation to *Ferriero*. Mattia was charged with causing the submission of fraudulent "claims" for reimbursement for medically unnecessary prescription medications. 2025 WL 2962563 at *1, Slip Op. at 1. The court easily concluded that the Superseding Indictment adequately alleged that (1) the prescriptions for which each claim sought reimbursement were components of the "claim" itself; and (2) a "prescription" represents not only that a provider wrote it for a patient, but that the provider decided the patient needs the medication. *Id.* *4, Slip. Op. 9-10. Just as in *Universal Health*, the "implicit misrepresentation" was a misleading half-truth: each claim represented that certain medications were provided on a physician's order, but omitted the material fact that the physician was a co-conspirator who never examined the patient. *See id.*

---

Justice Thomas addressing its application in concurrence. (Justice Thomas authored *Universal Health* for the unanimous Court.) Though that connection is beyond the limited scope of this Response, defense counsel will be happy to address the topic further if the Court wishes.

**2.** Second, charging an "implicit misrepresentation" is not the same as "implicitly charging a misrepresentation."

The *Mattia* and *Ferriero* indictments expressly identify the alleged fraudulent half-truths. The *Mattia* Superseding Indictment (attached as Exh. "A") identifies as "false or fraudulent" the "insurance claims for compounded medications" the defendant caused to be submitted; alleges that only "valid claims" for reimbursement would be paid, and the circumstances under which compounded drugs are validly "prescribed"; alleges that the defendant paid a coworker to fill prescriptions written by a co-conspirator doctor who had never examined him; alleges the mechanism by which those prescriptions were incorporated into claims that caused the victim to pay and enriched the defendant; and identifies certain fake prescriptions by number and fill date. Exh. "A" at pp. 2-5, ¶¶1(a)-(e), (g), (i), ¶3, ¶4(b)-(g); and p. 7 ¶¶1-2.

Similarly, the *Ferriero* Indictment (attached in pertinent part as Exh. "B"[3]) identifies by date, maker, recipient and content the specific communication on which his eventual wire-fraud conviction was

[3] Defense counsel will promptly provide the complete *Ferriero* Indictment, which is 75 pages long, if the Court wishes.

predicated, and alleges in detail what made it a misleading half-truth. Exh. "B," pp. 42-44 ¶¶73(F) & (G); *see* 866 F.3d at 120 (identifying July 9, 2008 email as basis for verdict).

Respectfully submitted,

For defendant Scott E. Boone:

/s/ *Lisa A. Mathewson*
Lisa A. Mathewson, Esquire
PA I.D. No. 77137
MATHEWSON LAW LLC
1617 JFK Blvd., Suite 2027
Philadelphia, PA 19103
(215) 399-9592
lam@mathewson-law.com

/s/ *Mark E. Cedrone*
Mark E. Cedrone, Esquire
PA I.D. No. 45549
SAXTON & STUMP
123 South Broad Street, Suite 2800
Philadelphia, PA 19109
(267) 665-2080
mec@saxtonstump.com

For defendant Daniel E. McGuire:

/s/ *Efrem M. Grail*
Efrem M. Grail, Esquire
PA I.D. No. 81570
Julia M. Gitelman, Esquire
Pa. I.D. No. 327449
THE GRAIL LAW FIRM
428 Boulevard of the Allies
Suite 500
Pittsburgh, PA 15219

(412) 332-9101
egrail@graillaw.com

For defendant Thomas E. Lauer:

/s/ *S. Wesley Gorman*
S. Wesley Gorman, Esquire
PA I.D. No. 325565
COMBER MILLER LLC
436 Seventh Ave., Suite 300
Pittsburgh, PA 15219
(412) 894-1380
wgorman@combermiller.com

For defendant Rebecca Davis

/s/ *Sarah Hyser-Staub*
Sarah Hyser-Staub, Esquire
PA I.D. No. 315989
Matthew Hoke, Esquire
PA I.D. No. 331634
McNEES WALLACE & NURICK LLC
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5473
sstaub@mcneeslaw.com

Dated: November 3, 2025

**CERTIFICATE OF SERVICE**

I certify that on this date, I served a copy of the foregoing Response via this Court's CM/ECF system upon all parties of record.

/s/ *Lisa A. Mathewson*

Dated: November 3, 2025

# Exhibit “A”

RECEIVED
By Tim Gorman at 3:28 pm, Apr 08, 2022

2018R00738/ES/SS

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Kevin McNulty |
| v. | : | Criminal No. 21-576 |
| CARMINE A. MATTIA, JR. | : | 18 U.S.C. §§ 1347, 1349, 1512(b)(3), 1518, and § 2 |

# SUPERSEDING INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

## COUNT ONE
## (Conspiracy to Commit Health Care Fraud)

1. Unless otherwise indicated, at all times relevant to this Superseding Indictment:

a. Defendant CARMINE A. MATTIA, JR. was a resident of Belleville, New Jersey and employed by a telecommunications company (the "Company"). Defendant CARMINE A. MATTIA, JR. was also a union representative for employees at the Company.

b. Individual-1 was a resident of New Jersey who had drug prescription benefits through the Company.

c. Robert Agresti, a co-conspirator not charged in this Superseding Indictment, was a resident of New Jersey and a physician with a medical practice in New Jersey.

**The Company's Employee Health Benefits Program**

d. The Company offered its employees health care coverage, including medical and prescription drug coverage (the "Company's health care plan"). Covered employees were referred to as beneficiaries.

e. A Pharmacy Benefits Management company ("PBM-1") provided pharmacy benefit management services for beneficiaries pursuant to a contract with the Company. PBM-1 adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims submitted on behalf of beneficiaries. PBM-1 then billed the Company based on the amount paid to the pharmacies, and the Company reimbursed PBM-1.

f. The Company's health care plan and PBM-1 were "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

**Compounding**

g. In general, "compounding" was a practice in which a licensed pharmacist, or a licensed physician, combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient. Pharmacies engaged in the practice of compounding were referred to as "compounding pharmacies."

h. Compounded drugs were not approved by the Food and Drug Administration ("FDA"), that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

i. Generally, compounded drugs were prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular

patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. Compounded drugs could also be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

**The Conspiracy**

2. From at least as early as in or around April 2016 through in or around July 2016, in the District of New Jersey and elsewhere, the defendant,

CARMINE A. MATTIA, JR.,

did knowingly and intentionally conspire and agree with others to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of or payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

**Goal of the Conspiracy**

3. It was a goal of the conspiracy for defendant CARMINE A. MATTIA, JR. and others to fraudulently obtain money by causing the submission of Individual-1's false and fraudulent insurance claims for compounded prescription medications to the Company's health care plan, and by receiving a

portion of the money that the Company paid for those compounded prescription medications.

**Manner and Means of the Conspiracy**

4. It was a part of the conspiracy that:

a. At different times during the relevant time period and in addition to his full-time employment as an employee at the Company, defendant CARMINE A. MATTIA, JR. was a "sales representative" selling various compounded medications, such as, but not limited to, pain creams, scar creams, wound creams, and metabolic supplements/vitamins ("vitamins"), for a marketing company located in or around New York and compounding pharmacies (the "Mattia Compounding Pharmacies").

b. The Mattia Compounding Pharmacies obtained payment from the Company's health care plan, through PBM-1, for the compounded medications ordered by individuals that defendant CARMINE A. MATTIA, JR. recruited.

c. The Mattia Compounding Pharmacies paid defendant CARMINE A. MATTIA, JR. a percentage of the adjudication or reimbursement amount for each prescription for compounded medication that defendant CARMINE A. MATTIA, JR. caused to be billed to a paying health plan.

d. In order to increase his profits as a sales representative for the Mattia Compounding Entities, defendant CARMINE A. MATTIA, JR. caused Individual-1 to receive medically unnecessary compounded medications. The Company's health care plan was then billed for Individual-1's medically

unnecessary compounded medications, and defendant CARMINE A. MATTIA, JR. received a percentage of the amount that the Company's health care plan paid for the medically unnecessary medications.

e. Defendant CARMINE A. MATTIA, JR., with the sole purpose of receiving money from the Mattia Compounding Pharmacies, persuaded Individual-1 to obtain compounded prescription medication from the Mattia Compounding Pharmacies.

f. Defendant CARMINE A. MATTIA, JR. secured and caused to be secured the signature of Robert Agresti on prescription forms for Individual-1, (a) without Robert Agresti and Individual-1 having a doctor/patient relationship, (b) without Robert Agresti determining that Individual-1 had a medical necessity for the compounded medications selected, and (c) without Robert Agresti conducting an examination of Individual-1.

g. Defendant CARMINE A. MATTIA, JR., while in New Jersey, gave Individual-1 cash and check payments to induce Individual-1 to obtain medically unnecessary compounded medications that were filled by the Mattia Compounding Pharmacies, including, but not limited to, prescriptions that were filled on or about April 4, 2016, April 29, 2016, June 28, 2016 and July 25, 2016.

h. After defendant CARMINE A. MATTIA, JR. learned that there was a federal criminal investigation into this scheme to defraud, defendant CARMINE A. MATTIA, JR. directed Individual-1 to provide false information to federal agents in order to conceal CARMINE A. MATTIA JR.'s participation in the

scheme. On or about July 17, 2019, defendant CARMINE A. MATTIA, JR. directed Individual-1 to falsely tell federal agents that the payments that defendant CARMINE A. MATTIA, JR. made to Individual-1 were for work that Individual-1 performed on defendant CARMINE A. MATTIA, JR.'s kitchen. In reality, and as defendant CARMINE A. MATTIA, JR. well knew, Individual-1 had never performed any work on defendant CARMINE A. MATTIA, JR.'s kitchen, and defendant CARMINE A. MATTIA, JR.'s payments to Individual-1 were illicit payments to induce Individual-1 to obtain medically unnecessary prescriptions.

i. As a result of defendant CARMINE A. MATTIA, JR.'s participation in the scheme to bill the Company's health care plan for medically unnecessary compounded medications for Individual-1, defendant CARMINE A. MATTIA, JR. caused a loss to the Company's health care plan of at least approximately $100,000.00.

In violation of Title 18, United States Code, Section 1349.

**COUNTS 2-4**
**(Health Care Fraud)**

1. Paragraphs 1 and 3 - 4 of Count 1 of this Superseding Indictment are hereby realleged and incorporated as if set forth in full herein.

2. On or about the dates set forth below in the District of New Jersey and elsewhere, the defendant,

CARMINE A. MATTIA, JR.,

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of or payment for health care benefits, items and services:

| Count | Pharmacy Prescription Number | Date Prescription Filled |
|---|---|---|
| 2 | 000000133702 | July 25, 2016 |
| 3 | 000000133703 | July 25, 2016 |
| 4 | 000000133704 | July 25, 2016 |

In violation of Title 18, United States Code, Section 1347 and Section 2.

**COUNT 5**
**(Witness Tampering)**

1. Paragraphs 1 and 3 to 4 of Count 1 and Paragraphs 1 and 2 of Counts 2 through 4 of this Superseding Indictment are hereby realleged and incorporated as if set forth in full herein.

2. On or about July 17, 2019, in the District of New Jersey, the defendant,

CARMINE A. MATTIA, JR.,

did knowingly use intimidation, threaten, and corruptly persuade Individual-1, and attempt to do so, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, in violation of Title 18, United States Code, Section 1512(b)(3).

**COUNT 6**
**(Obstruction of Health Care Investigation)**

1. Paragraphs 1 and 3 to 4 of Count 1 and Paragraphs 1 and 2 of Counts 2 through 4 of this Superseding Indictment are hereby realleged and incorporated as if set forth in full herein.

2. On or about July 17, 2019, in the District of New Jersey, the defendant,

CARMINE A. MATTIA, JR.,

willfully prevented, obstructed, misled, and delayed the communication of information and records relating to the violation of a Federal health care offense to a criminal investigator duly authorized by the United States Federal Bureau of Investigation to conduct and engage in investigations for prosecutions for violations of health care offenses, and attempted to do so, in violation of Title 18, United States Code, Section 1518.

**FORFEITURE ALLEGATION**

1. The allegations contained in this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture, pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of the federal health care offense (as defined in 18 U.S.C. § 24) charged in Count One of this Superseding Indictment, defendant CARMINE A. MATTIA, JR. shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense.

Substitute Assets Provision

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

A TRUE BILL

[redacted]

FOREPERSON

PHILIP R. SELLINGER
United States Attorney

**CASE NUMBER: 21-576**

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**CARMINE A. MATTIA, JR.**

# SUPERSEDING INDICTMENT FOR

**18 U.S.C. §§ 1347, 1349, 1512(b)(1) and (b)(3), 1518 and § 2**

[redacted]

**Foreperson**

**PHILIP R. SELLINGER**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Emma Spiro
Sean M. Sherman
*ASSISTANT U.S. ATTORNEYS*
*973-645-2746*
*973-645-2733*

# Exhibit "B"

9/11/13 12:33 p.m.

rah/2006R01332

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 13-592(ES) |
| | : | |
| v. | : | 18 U.S.C. §§ 371, 1341, 1343, |
| | : | 1952(a)(1) & (3), 1962(c) & |
| JOSEPH A. FERRIERO | : | § 2 |

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT 1**
(Racketeering)

**Individuals and Entities**

1. At all times relevant to Count 1 of this Indictment:

A. Defendant JOSEPH A. FERRIERO was an attorney licensed in New Jersey and a partner in a West Orange, New Jersey law firm from in or about 2000 to on or about March 18, 2002, and then in a Lyndhurst, New Jersey law firm (the "Lyndhurst Law Firm") from on or about March 18, 2002 forward. In or about 1998, defendant FERRIERO was elected Chairman of the Bergen County Democratic Organization (the "BCDO"). He was re-elected to this position in or about 2000, 2002, 2004, 2006, and 2008, holding the position continuously until he resigned in or about January 2009.

B. The BCDO was an entity established pursuant to New Jersey law as a county committee of the Democratic political party. Among other responsibilities, the BCDO selected

"ha[d] not authorized [Wood-Ridge Public Official #2] to proceed with your contract." The Software Developer forwarded this e-mail to defendant FERRIERO on or about April 16, 2008, with the message "Fyi... ugh." Defendant FERRIERO responded, also on or about April 16, 2008, "K let's get 2gether tomorrow." Subsequently, in or about July 2008, defendant FERRIERO, in the presence of the Software Developer, confronted Wood-Ridge Public Officials #1 and #2 at a BCDO-sponsored event and angrily demanded to know why Wood-Ridge had not retained C3.

E. In or about November 2007, at a BCDO-sponsored event at an annual gathering of municipal and other public officials in Atlantic City, New Jersey, defendant FERRIERO introduced the Software Developer to a high-ranking public official in the Township of Saddle Brook, New Jersey (the "Saddle Brook Public Official"), who was a member of the Democratic Party and the BCDO, and recommended C3 to the Saddle Brook Public Official. Defendant FERRIERO did not disclose to the Saddle Brook Public Official that he had a financial arrangement with the Software Developer according to which he would receive a kickback of a percentage of the proceeds from any contract between Saddle Brook and C3. Saddle Brook subsequently retained C3, effective on or about January 1, 2008, at a rate of approximately $2,000 per month.

F. In or about April 2008, after a presentation made by the Software Developer to public officials of the Borough of

Cliffside Park, New Jersey regarding C3, defendant FERRIERO contacted a public official in Cliffside Park ("Cliffside Park Public Official #1") and provided a favorable opinion of, and recommended, the Software Developer. Defendant FERRIERO did not disclose to Cliffside Park Public Official #1 that he had a financial arrangement with the Software Developer according to which he would receive a kickback of a percentage of the proceeds from any contract between Cliffside Park and C3. Before the Cliffside Park Council voted on the retention of C3, Cliffside Park Public Official #1 made at least one Cliffside Park Councilperson aware of defendant FERRIERO's recommendation. Cliffside Park subsequently retained C3, effective in or about May 2008, at a rate of approximately $2,000 per month.

G. Prior to signing a contract with C3, however, Cliffside Park officials developed a concern that defendant FERRIERO might have an undisclosed financial interest in C3. In response to an inquiry from another Cliffside Park public official ("Cliffside Park Public Official #2"), the Software Developer, on or about July 9, 2008, transmitted to Cliffside Park Public Officials #1 and #2, via e-mail, paperwork showing that the Software Developer was the sole member of C3. The Software Developer intentionally did not disclose to the Cliffside Park officials defendant FERRIERO's separate agreement with Braveside entitling defendant FERRIERO to secretly receive a kickback of at least 25 percent of the gross revenues of C3's

contract with Cliffside Park.

74. From in or about August 2007 to at least in or about April 2008, defendant FERRIERO and the Software Developer corresponded with each other on numerous occasions in furtherance of their unlawful arrangement, including through the use of wire communications in interstate commerce. On December 30, 2007, for example, the Software Developer sent an e-mail from New Jersey to defendant FERRIERO, who was at that time vacationing in Colorado, titled "UPDATE." The e-mail attached contracts and first quarter invoices for the towns of Dumont, Teaneck, and Wood-Ridge and indicated that the same would be sent via fax for Saddle Brook. The e-mail further summarized the Software Developer's efforts to obtain contracts for C3 in 12 other municipalities and listed another nine municipalities that the Software Developer described as "within our reach." All of the municipalities listed were Bergen County municipalities and, in most cases, were municipalities in which members of the Democratic party either held, or would hold as of January 1, 2008, the majority of the positions on the municipalities' governing bodies. Regarding one municipality that was transferring from Republican to Democratic control, the Software Developer indicated that "this will need your intervention and they want to move very quick, so as soon as you touch down in NJ, that might need to be one of your first calls." Regarding another municipality, in which control recently had shifted from the Republican to the Democratic party